MAURICE WEILL

*v.*

THE AMERICAN METAL COMPANY.

*Opinion filed October 19, 1899.*

1. TRIAL—*right of court to direct verdict not taken away by conflict on immaterial matter.* A conflict in the evidence upon immaterial matter does not deprive the court of the right to take the case from the jury by an instruction.

2. SAME—*court need not submit issues to jury not based on the evidence.* Whether the contract sued upon had been abandoned should not be submitted to the jury in the absence of evidence of abandonment.

3. SALES—*what a sufficient tender of goods sold.* Merchandise sold is sufficiently tendered, to entitle the seller to maintain an action for breach of contract, where it was shipped to the city in which the purchaser resided but was not delivered because of his refusal to pay the draft attached to the bill of lading.

4. SAME—*sufficiency of tender of goods is waived by failure to object at the time.* Unless the sufficiency of the tender of goods purchased is

questioned at the time, the purchaser cannot thereafter be heard to object to it.

5. SAME—*refusal of purchaser to give shipping directions is a refusal of goods.* The refusal of a purchaser to give shipping directions for the goods is a refusal to accept them and relieves the seller from his obligation to forward them,—especially where the purchaser has an option as to the place of delivery.

*Weill* v. *American Metal Co.* 80 Ill. App. 406, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

PAM, DONNELLY & GLENNON, and M. J. ISAACS, for appellant.

HOYNE, O'CONNOR & HOYNE, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an action of assumpsit, brought by the appellee, to recover damages for the failure of appellant to accept a certain quantity of lead and spelter which appellee had sold appellant. The contract was established by the letters and telegrams of the parties read in evidence on the trial, from which it appeared that appellee sold appellant eight cars of pig lead and eight cars of spelter, to be shipped to East St. Louis or Chicago, at appellant's option, the lead at $3.65 per one hundred pounds f. o. b. Chicago or $3.60 per one hundred pounds f. o. b. East St. Louis, and the spelter at $4.20 per one hundred pounds f. o. b. Chicago or $4.15 per one hundred pounds f. o. b. East St. Louis, two cars each of metal to be shipped in each of the months of March, April, May and June, 1893, and payment to be made by payment of sight draft, with bill of lading attached. In March and April, 1893, appellee shipped appellant two cars of pig lead and two cars of spelter, and in May, 1893, two cars of pig lead and one car of spelter, which were

paid for. On May 29, at appellant's request, it was agreed that the shipment of one of the two cars of spelter to be shipped in May should be postponed until July, and that the shipment of the two cars of spelter to be shipped in June should be postponed until August. In June appellee, by the direction of appellant, shipped to Chicago the two cars of lead to be shipped in that month, and on June 21 appellee drew a sight draft on appellant for $2360.56, the amount of the shipment, and sent it, with the bill of lading, to Chicago for collection. The draft was presented but payment refused unless appellee would allow $133.99, which appellant claimed grew out of transactions between the parties prior to the making of the present contract. Appellee denied the claim and refused to allow it. On July 17 appellee wrote appellant for shipping directions for the car-load of spelter to be shipped in July, but no shipping directions were given. On August 10 appellee wrote to appellant for shipping directions for the two cars of spelter to be shipped in August, saying: "You are undoubtedly aware that it is necessary for me to have sufficient time to effect shipment, and I hereby request you to let me have shipping instructions for these two car-loads on or before August 21. Unless I am on the 21st of August in possession of your shipping instructions for the said two cars of spelter I shall infer that you decline to take delivery of the said two car-loads." To this letter appellant made no reply. The action was brought to recover damages for appellant's failure to accept and pay for the lead and spelter, and on a trial before a jury appellee secured a verdict and judgment for $1136, which was affirmed on appeal to the Appellate Court.

The circuit court instructed the jury to find the issues for the plaintiff, and the giving of this instruction is the first alleged error relied upon in appellant's argument. Where there is evidence before the jury fairly tending to prove or disprove any material issue involved in a case,

it is not within the province of the court to take the case· from the jury by an instruction. Here, it is claimed that there was a conflict in the evidence in regard to an interview alleged to have occurred between Baerwald, one of plaintiff's witnesses, and appellant, on July 10, 1893, in regard to the tender of two cars of lead and a demand of payment. But conceding this to be true, appellant's position is not tenable. The testimony of Baerwald may be disregarded entirely and the evidence stands uncontradicted that the two cars of lead were shipped to Chicago by appellant's order; that the lead arrived; that appellee made a sight draft for the amount of the lead; that the draft, which was put in evidence, was sent for collection through a bank in New York, with the original bill of lading attached, and duly presented for payment and payment refused. Whether, therefore, Baerwald had the interview with appellant testified to by him was immaterial and a matter of no consequence.

It is also claimed that it should have been left to the jury to determine whether or not the contract between the parties had been terminated. The sole claim of appellant that the contract had been terminated is predicated on a letter written by appellee on June 23, which was as follows: "We have your letter of the 21st inst., in which you give us notice that you will not honor our draft for $218.28 against two casks of Italian antimony sold to you on the strength of the order given us in your letter of June 16. The reasons given in your letter for acting thus are very unbusinesslike. If there should ever be a difference to which you are justly entitled, you are very well aware that we are not the people to refuse a settlement. * * * We now beg to give you notice that unless these two invoices are promptly settled by you we shall consider all business between us at an end for once and forever. This is not the way in which reputable firms do business." This letter does not allude to the contract existing between the parties in reference to

the lead and spelter. It is written in regard to another matter, and we see nothing in the letter that tends to prove that appellee intended to abandon the contract. The only reasonable construction to be placed on the last part of the letter so much relied upon by appellant is, that unless the two invoices therein mentioned were promptly paid appellee would not in the future enter into any other or new contracts with appellant. Moreover, it clearly appears from the correspondence of the parties after the 23d of June that there was no intention of either party to abandon or set aside the contract in question. As there was no evidence of an abandonment of the contract the court did not err in refusing to submit the question to the jury.

It is also claimed in the argument that the lead which was to be delivered in June and the spelter to be delivered in July and August were not tendered to appellant, as required by the contract, and hence an action could not be maintained for a breach of the contract. As to the lead, it is plain from the evidence that it was shipped to Chicago in June, 1893, by the direction of appellant. It also appears that the lead arrived in Chicago between June 21 and June 26; that a draft was drawn for the amount of the lead and sent through a bank on New York, with the bill of lading attached, presented, and payment refused. The lead was in Chicago ready to be delivered upon the payment of the draft representing the amount due for the lead, and the only reason it was not turned over was on account of appellant's refusal to pay. We think, when all the facts and circumstances are considered, the tender was sufficient. Moreover, if the tender was not sufficient appellant should have objected at the time, and, if he so desired, have required a production of the lead. This was not done. Indeed, no objection was made in regard to the sufficiency of the tender. The only reason appellant gave for refusing to accept the bill of lading and pay the draft drawn for the lead was, he

claimed appellee owed him a small bill, growing out of another transaction, and on this account, and this alone, he refused to receive the lead. If the tender was not sufficient appellant should have said so at the time, and having failed to do so at the proper time he cannot now be heard to object.

In reference to the delivery of the spelter but little need be said. By the contract the lead and spelter were to be shipped to Chicago or East St. Louis, at appellant's option. The manner in which appellant exercised his option was by giving appellee shipping directions, and, of course, the shipping directions would have to be given in time to enable appellee to ship within the stipulated months. It appears that appellee on July 17 and August 10 wrote appellant for shipping directions for the spelter to be delivered in these two months, and in the letter notified appellant that unless he sent directions by a certain date, which was the latest date which would enable appellee to ship the spelter within the stipulated period, appellee would infer appellant did not intend to accept the spelter. No reply was made to these letters asking shipping directions, but on July 27 appellant wrote that he would not give shipping directions unless "things turned out satisfactorily,"—meaning, doubtless, that he would not give shipping directions for the spelter unless appellee would adjust his alleged claim of $133.99. After receiving the notice of July 17 and August 10, the refusal of appellant to give any directions in regard to shipping the spelter may be regarded as a refusal to accept the spelter, and appellant having refused to accept, appellee was under no obligation to ship. Indeed, it could not know where to ship the spelter until appellant had exercised his option and notified it to which one of the two places the goods should be shipped.

It is also claimed that the court erred in the admission and exclusion of evidence, but upon an examination of the record we find no substantial error in that regard.

It is also insisted that it was erroneous to allow interest on plaintiff's demand. The record fails to show that interest was allowed in determining the amount due the appellee, and hence there is nothing before us upon which the position of counsel in reference to interest can be sustained.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*